1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MARQUISE VINCENT SMITH,                    No. 2:16-cv-1916-WBS-EFB P

12                   Petitioner,

13           vs.                                FINDINGS AND RECOMMENDATIONS

14   DEBBIE ASUNCION,

15                   Respondent.

16

17           Petitioner is a state prisoner proceeding without counsel with a petition for a writ of

18   habeas corpus pursuant to 28 U.S.C. § 2254.[1]  He challenges convictions entered against him on

19   August 20, 2012 in the Sacramento County Superior Court on charges of: (1) murder in the 2nd

20   degree pursuant to Cal. Penal Code 187(a) with firearm enhancements under Penal Code

21   12022.5(a)(1) and Penal Code 12022.53(d); and (2) possession of a firearm by a convicted felon

22   pursuant to Cal. Penal Code 12021(a)(1).  He seeks federal habeas relief on the following

23   grounds:  (1) the trial court's refusal to order an inmate witness brought from jail to testify on

24   petitioner's behalf as to third party culpability violated his rights to compulsory process and to

25   present a defense; (2) his trial counsel rendered ineffective assistance by failing to adequately

26   prepare him for his trial testimony; (3) his trial counsel rendered ineffective assistance by failing

27   _____

28        [1] The matter has been referred to the assigned magistrate judge pursuant to 28 U.S.C.
     § 636(b)(1) and Local Rule 302.

                                            1

to object to hearsay testimony from prosecution witnesses Fred Robinson and Lonnell Hart; (4) his trial counsel rendered ineffective assistance by failing to renew a request to bring an inmate witness from prison to testify as to third party culpability; and (5) his trial counsel rendered ineffective assistance by failing to present exculpatory testimony from Lanesha Blakes. Upon careful consideration of the record and the applicable law, and for the reasons discussed below, the petitioner's application for habeas corpus relief must be denied.

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> A Fastrip gas station was a popular late-night hangout. On September 4, 2010, after 2:00 a.m., Danielle Benefield arrived there in a car with two female friends. The driver got out to mingle with the crowd, but Benefield stayed in the car with Roxanne Neal, who did not like the atmosphere. When the driver did not return right away, Benefield got in the driver's seat and moved the car to the side. A man holding a gun at his side emerged from some parking stalls and called out, "Do we have a problem?" Before they could answer, the man began firing his gun. Neal ducked down in the back seat. She heard three gun shots and the sound of glass shattering. Benefield said, "I've been hit." The car was moving and drifted, but Neal managed to stop it. She did not get a good look at the shooter's face because she was focused on his gun, which appeared to be a revolver. He was wearing a white T-shirt and blue jeans.

> The victim died within minutes from a single gunshot that entered through her back and passed through her right lung and heart.

> Defendant's friend, Fredrick Robinson, called as a witness by the prosecution, testified he went with defendant to "hang out" at the gas station around 1:30 a.m. Defendant was wearing a white T-shirt. They greeted a mutual friend, Gary Castillo, who was driving a Ford F150 truck. At some point, defendant left in his car with a female friend. About 30 to 45 minutes later, Robinson heard three gun shots. Robinson got in Castillo's truck, and Castillo drove them to another gas station about a mile away, where they encountered defendant. At trial, Robinson denied seeing defendant return to the Fastrip before the gun shots.

> The prosecution called as a witness Lonnell Hart, another of defendant's friends. Hart did not want to be a "snitch" and denied telling police he received a phone call the next day from Robinson, who said defendant "done shot somebody." Hart's testimony was impeached with a recorded police interview, played for the jury, in

2

which Hart told police that Robinson called and said "Quise," aka defendant, thought someone in a car was chasing him that night and, when he spotted what he believed to be that car, defendant fired shots into it. In his trial testimony, Hart denied or said he could not recall making the statements to police.

Gary Castillo testified defendant left the Fastrip for about 30 minutes but returned before the shots were fired and said someone in a car had chased him, causing defendant to hit a curb and damage his mother's car. At trial, Castillo testified defendant left again, before the shots were fired. In a recorded police interview played for the jury, Castillo said Robinson kept saying, "That stupid-ass nigger" as they left after the shooting. Castillo also told police that, before the shooting, defendant saw Castillo had a gun, agreed it was necessary and, when Castillo asked whether defendant had his "thing" with him, defendant said, "Oh, you know it." Castillo had previously seen defendant with a gun but did not see it that night.

Sheriff's Detective Elaine Stoops interviewed defendant on February 3, 2011, after his arrest on a probation violation. He said he parked at a Shell station across the street from the Fastrip, heard the gun shots, ran to see if Robinson was okay, and met up with Robinson and Castillo at a nearby Chevron station. Defendant was wearing a gray and white vest and blue jeans that night. Defendant had a second police interview a couple of days later, after which Stoops escorted defendant back to jail and heard him say, "I'm not a killer. It was an accident."

Defendant made two phone calls from jail to a Bonet Banks on February 10, 2011, the recordings of which were played for the jury. In the first call, before he was interviewed about this murder, defendant said, "I'm gonna knock my time, you know, I'm a grown man, I did what I did, you told me, but it wasn't on purpose so ... it's all good." In the second call to Ms. Banks after police interviewed defendant about the murder, he said he believed Hart and Robinson had "snitched on this shit." He said, "If you rockin' with me like that nigga, you supposed to rock tough nigga" and "That's what I get for fuckin' with bitch niggers and doin' stupid shit. [¶] ... [¶] But it's all good though, you feel me? Cause, uh, do you feel me, it wasn't on purpose an accident [sic ], you feel me, so there's a— there's a cause and reaction for everything." He said when he got out, those "snitches" and everybody in that circle had "better, you feel me, stay clear...."

The defense called as a witness the victim's cousin, Latrice Hatcher, who said she was in a separate car that night. She heard the gunshots and saw the shooter but could only identify him as a black man wearing a white T-shirt and jeans. She originally told police the shooter was bald and got into a burgundy Ford Taurus but admitted at trial this was what she heard other people say.

Defendant's mother, Lakeitha Smith, testified defendant borrowed her car that night, left wearing a black T-shirt, and the next morning expressed remorse that the rim on one of her tires was bent.

Defendant testified he was convicted of a felony in 2009 and therefore is prohibited from owning a gun. He denied having a gun or shooting it at Fastrip that night. He borrowed his mother's car and went to socialize with Robinson and friend Lanesha "London" Blake. At the Fastrip, London asked him to give her a ride to pick up something, and he did. On the way, London received a phone call from a man who yelled about her being with defendant. When they reached London's destination, defendant noticed a white car, got a "weird feeling," and so turned around and left. The car followed him and cut him off at a stop sign. Defendant backed up and drove around the white car to get back on the road, but the car continued to follow him. Defendant sped up, made a sharp turn, and hit the curb, bending a tire rim. He pulled into the Fastrip parking lot. He got out of the car to look for Robinson. About 20 seconds later, he heard gunshots. He did not see the shooter or if anyone was hit. He left the scene and met up with his friends at a Chevron station.

As to his phone conversations with Banks, defendant testified he referred to Robinson and Hart as "snitches," meaning they had lied to the police about him being the shooter. He referred to "what I did," meaning only he never should have gone to the Fastrip. His comment "it was an accident anyway" was based on what other people were saying. Defendant claimed Detective Stoops misinterpreted his statement in jail; what he said was, "I am not a killer. [¶] ... [¶] This had to be an accident." He lied to the detective about other matters, such as claiming he was at the Shell station, not Fastrip.

The jury found defendant not guilty of first-degree murder, but guilty of second-degree murder and found true that defendant personally and intentionally discharged a firearm resulting in death (§ 12022.53, subd. (d)) and personally used a .38 caliber revolver (§ 12022.5, subd. (a)(1)). The jury also found defendant guilty of possession of a firearm by a felon (§ 12021, subd. (a)(1)). The trial court sentenced defendant to a total of 40 years to life in prison: an indeterminate term of 15–years–to–life for second degree murder, plus a consecutive term of 25–years–to–life for discharging a firearm resulting in death (§ 12022.53, subd. (d)). The court also sentenced defendant to 10 years for personal use of a firearm (§ 12022.5, subd. (a)(1)) and two years for count two possession of firearm by felon (§ 12021, subd. (a)(1))—both stayed under section 654.

*People v. Smith*, 2015 WL 5012920, at *1–3 (Cal.App. 3 Dist., 2015) (unpublished).

## II. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or

/////

4

application of state law.  *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.*  Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003).

Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from the Supreme Court's

decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v.*

*Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002

(9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that

court concludes in its independent judgment that the relevant state-court decision applied clearly

established federal law erroneously or incorrectly. Rather, that application must also be

unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473

(2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v.*

*Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

must show that the state court's ruling on the claim being presented in federal court was so

lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*,

527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008)

(en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

§ 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

considering de novo the constitutional issues raised.").

/////

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be
overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*,
384 F.3d 628, 638 (9th Cir. 2004)).

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded

7

jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

## III. Petitioner's Claims

### A. Trial Court's Refusal to Allow Prisoner Evidence of Third Party Culpability

Petitioner claims that the trial court violated his right to present a defense when it declined to allow him to present hearsay testimony from Deborah Flournoy, a prisoner who claimed that she had a phone conversation with an individual named 'Red' on the night of the killing. Flournoy claimed that, during her conversation with Red, she overheard him confess to killing a woman at a gas station. Flournoy would not reveal Red's identity, however, and defense counsel's investigation into his identity was unavailing. Unable to present Flournoy's hearsay evidence, Defense counsel asked the trial court to summon Flournoy and compel her to reveal Red's identity, but it also declined this request. Consequently, petitioner claims that the trial court violated his right to compulsory process.

Petitioner raised this claim on direct appeal and the court of appeal rejected it, reasoning:

> Defendant contends the trial court erred when it excluded evidence of third party culpability, thus violating his constitutional right to present a defense. Assuming he did not forfeit a constitutional claim by failing to raise it in the trial court, as urged by the Attorney General, we reject defendant's contention.

> Before trial, the defense filed a motion in limine seeking to admit hearsay evidence of third party culpability. Counsel said that, in reviewing police reports, he saw that the victim's cousin Latrice Hatcher called Detective Elaine Stoops in February 2011 and said she (Hatcher) had talked to her aunt, Deborah Flournoy, who said she was on the phone with someone named Red the night of the killing and heard Red say, "Oh 'fuck' I just killed that 'bitch'! I didn't mean to kill that 'bitch'." Flournoy said to Red, "Blood for blood, that was my niece." Flournoy asked Red what happened,

8

and "I [Hatcher] guess he hung up on her." Flournoy told Hatcher Red is a silent killer and "he don't play." The defense asserted the police never followed up.

On July 10, 2012, the defense team interviewed Flournoy, who was in custody on an unrelated matter and would not agree to be recorded. She said that on the night of the shooting, a person named "Red" called her to "cop some dope." When they ended the conversation, she heard Red, who apparently thought he had hung up his phone, say to his "homies" in the background that he had "shot some bitch" and he "mentioned" a gas station. On July 25, 2012, the defense got her to sign a written statement saying this was true. Shown five photographs including defendant's, she said none of them was the Red on the phone.

Defense counsel asserted he was not aware of any other gas station shootings, and females rarely get shot. He wanted to have Flournoy testify before the jury as to what Red assertedly said, because "[w]e can't find Red," and the hearsay was admissible as an admission against Red's penal interest. Defense counsel said Flournoy said she would contact Red when she got out of jail, but that was two months away. She had his number in her cell phone, which she did not have in jail and would not allow the defense to access outside her presence. The number Flournoy gave as her own does not appear on defendant's phone records. Counsel asserted Flournoy said Red was a member of the Oak Park Bloods gang, and his motive was that he was rejected by the girl he shot, whom he wanted to date.

Defense counsel said he could not force Flournoy to help and asked the trial court at least to summon Flournoy to court and compel her to reveal Red's identity.

The trial court agreed with the prosecution that the defense had not even passed the threshold of showing diligent efforts to find Red. The court offered an Evidence Code section 402 hearing for the defense investigator to testify on this point, but defense counsel asked to "table this until even after opening statement" to give the defense more time to try to find Red. The trial court agreed but warned defense counsel "it would be on you to raise it before the Court at the appropriate time." Defense counsel agreed.

Defendant did not revisit the matter.

On cross-examination of Detective Stoops, defense counsel, over the prosecution's objection, asked about Hatcher's phone call. The detective said, "She told me that her aunt had been on the phone with someone by the name of Red who she believed to be [defendant], who had talked about being the person who did the shooting, yes." After reviewing her notes, the detective said Hatcher did not say Red was defendant.

During a break in defendant's testimony, the court stated there had been a brief conversation in chambers, and "we need to address [a matter] that has been under submission since the beginning of the

9

trial ... whether to permit testimony from a witness who claims that she had a phone call from an individual named Red who made an assertion, unwitting assertion that he had shot and killed a female." Defense counsel said everything was in his moving papers, except the defense efforts to find Red. Counsel reiterated those efforts. He interviewed Flournoy twice and she would not reveal Red's identity or give a physical description. She would not give the defense permission to look through her phone outside of her presence. She alternately wanted to wait or, in counsel's perception, she seemed scared because she said, "Red doesn't play."

Defense counsel also said he had asked defendant's family to contact anybody they know who might know Red, but they were unsuccessful. The defense heard from the prosecution that Hatcher, who is the victim's cousin, believed Red was one Darryl Buckner. The defense found Buckner in jail, but he denied knowing Flournoy or being involved, and anyway he was in jail at the time of the shooting and could not have made a cell phone call to Flournoy. Counsel asserted from "general knowledge" that Red is a popular nickname. Counsel concluded Red was unavailable. Counsel acknowledged the court also had concerns about reliability of the statement attributed to Red, but said he had nothing to add to his written motion in limine. Defense counsel acknowledged defendant is sometimes referred to as Red but noted Flournoy did not identify a photo of defendant as the Red who phoned her.

The trial court asked if it was a fair statement that the defense "investigation has further revealed the prospect that there is another individual named Red somewhere out in the world unidentified, and that you have extreme difficulty obviously in finding such a person." Defense counsel replied, "I think not our investigation, but just general knowledge of being around the courthouse representing people named Red, seeing people named Red, aka, but not investigation, per se." The prosecutor argued the statement attributed to Red said nothing about when or where the incident assertedly occurred; the person who claimed to have overheard the statement during a drug deal was uncooperative; the motive attributed to Red (the source of which was undisclosed) did not match the facts of this crime; the person who was supposed to be Red was not the right Red; and the search for this mysterious person could go on forever; and there was not enough information to show credibility or third party culpability.

The trial court found there was some indicia of a declaration against interest, but the identity of the declarant was unknown; "the context of the statement attributable to him suggests unreliability"; and a person who was thought to be the declarant turned out not to be the declarant. "The Court believes the utterance is unreliable, obviously not subject to cross-examination. And without indicia of reliability, admission of the statement would be fundamentally unfair to the People, as there would be no opportunity to test or confront the truth of the utterance or the circumstances specifically surrounding the utterance as, or when made, I should say, by the declarant. [¶] So, accordingly, the Court will preclude Ms. Flournoy from testifying that she ... heard this utterance from this individual. And,

again, the Court does not make this ruling lightly as it has considered the potential probative value of the utterance against the reliability or unreliability more specifically of the utterance. [¶] The utterance carries very, very little weight. [¶] It is difficult to allow someone to just simply come into court and say: 'I got a call from an individual that you can't find,' who no one knows who it is, who claims they committed the act. [¶] That has virtually no probativ[ ]e value."

To be admissible, third party culpability evidence need only be capable of raising a reasonable doubt of the defendant's guilt. (*People v. Hall* (1986) 41 Cal.3d 826, 834.) Any such evidence remains subject to exclusion under Evidence Code section 352 if its probative value is substantially outweighed by consumption of time or danger of undue prejudice or confusing or misleading the jury. (*Hall, supra*, at pp. 834–835.) A trial court's ruling on admissibility of third party culpability evidence is reviewed for an abuse of discretion. (*People v. Elliott* (2012) 53 Cal.4th 535, 581.)

Evidence Code section 1230 provides that an out-of-court declaration against penal interest is admissible if its proponent shows the declarant is unavailable; the declaration was against the declarant's penal interest when made; and the declaration is sufficiently reliable to warrant admission despite its hearsay character. (*People v. Duarte* (2000) 24 Cal.4th 603, 610–611 (*Duarte* ).) A person is unavailable as a witness if he is "[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process." (Evid.Code, § 240, subd. (a)(5).) The focus of the declaration against interest exception is the basic trustworthiness of the declaration. (*People v. Geier* (2007) 41 Cal.4th 555, 584 (*Geier* ).)

Defendant suggests any declaration against penal interest is necessarily trustworthy and reliable, requiring the trial court to allow it. Not so. In determining whether a statement is sufficiently trustworthy to be admissible under Evidence Code section 1230, the court may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the declarant's relationship to the defendant. (*Duarte, supra*, 24 Cal.4th at p. 614; *People v. Frierson* (1991) 53 Cal.3d 730, 745 (*Frierson* ).) The determination as to whether trustworthiness is present "requires the court to apply to the peculiar facts of the individual case a broad and deep acquaintance with the ways human beings actually conduct themselves in the circumstances material under the exception." (*Frierson, supra*, at p. 745.) This endeavor is committed to the sound discretion of the trial court, and its finding regarding trustworthiness will not be disturbed on appeal absent an abuse of discretion. (*Geier, supra*, 41 Cal.4th at p. 585; *Frierson, supra*, at p. 745.)

Here, the trial court expressly found the context of the statement attributable to Red suggested unreliability. The evidence supports this finding. The context was that the victim's aunt, who could be

expected to want her niece's killer brought to justice, refused to identify Red. Flournoy said Red "mentioned" a gas station but did not say Red said the shooting happened at a gas station. Contrary to defendant's suggestion on appeal, there was no evidence that this was the only gas station shooting at or about this time. Rather, defense counsel said he was unaware of any other gas station shootings. There was no evidence, except that defendant was also known as Red, corroborating "Red" as the killer. Other than defendant's denials, all evidence pointed to defendant. Contrary to defendant's argument, the trial court did not conclude the evidence was unreliable only because Red's identity was unknown.

The trial court did not improperly evaluate credibility but instead noted the prosecutor had no way to test the credibility of the hearsay statement attributed to Red—"there would be no opportunity to test or confront the truth of the utterance or the circumstances specifically surrounding the utterance as, or when made, I should say, by the declarant." Defendant submits it is unfair to exclude Red's statement because the prosecutor cannot cross-examine, while at the same time denying defendant the tools to determine Red's identity. However, the trial court did not exclude the evidence merely because of lack of opportunity for cross-examination, but because the evidence was not sufficiently reliable.

We conclude the trial court did not abuse its discretion by excluding the statement attributed to Red for lack of trustworthiness. Our conclusion on this point also disposes of defendant's claims that exclusion violated his constitutional rights to present a defense and to due process. The trial court's correct application of the ordinary rules of evidence generally does not impermissibly infringe on a defendant's right to present a defense. (*People v. Boyette* (2002) 29 Cal.4th 381, 427–428.) *People v. Ayala* (2000) 23 Cal.4th 225 (*Ayala* ) held the trial court did not violate the defendant's constitutional rights by excluding hearsay statements of two persons, since deceased, bolstering the defendant's claim of third party culpability, where there was no opportunity for cross-examination and the statements were not made under circumstances suggesting they were reliable. (*Id*. at p. 270.)

In *People v. Garcia* (2005) 134 Cal.App.4th 521, a defendant charged with robbery-murder in Laguna Beach sought to have the lead detective testify that a deceased former police officer said she spoke to a stranger in a bar, Manuel Rodriguez, who said he committed a robbery and homicide in Laguna Beach. (*Id*. at pp. 523, 534.) Other evidence implicated Rodriguez as the perpetrator. (*Id*. at p. 527.) The defendant claimed the trial court's exclusion of the evidence violated his right to due process. (*Id*. at p. 535.) The defendant relied on *Chambers v. Mississippi* (1973) 410 US. 284 [35 L.Ed.2d 297] (*Chambers* ) and *Green v. Georgia* (1979) 442 U.S. 95 [60 L.Ed.2d 738] (*Green* ). (*Garcia*, *supra*, 134 Cal.App.4th at pp. 537–539.) *Chambers*, *supra*, 410 U.S. at pp. 299–300, held state law that did not recognize a hearsay exception for declarations against penal interest violated due process by excluding confessions by a declarant to a close acquaintance, each confession corroborated by some other evidence in the case.

(*Garcia, supra*, at pp. 535–538.) Similarly, in *Green*, *supra*, 442 U.S. at pages 96–97, the state law was similarly restrictive and led to exclusion at the penalty phase of a capital case a statement by a codefendant that he shot the victim while the defendant was absent from the scene, and the prosecution considered it sufficiently reliable to offer it against the codefendant at his trial pursuant to a different evidentiary rule. (*Garcia, supra*, at p. 538.)

*Garcia* rejected the defendant's apparent argument that a statement by a retired police officer to an investigating officer is inherently reliable and held the trial court did not err in excluding the evidence as insufficiently reliable. (*Id.* 134 Cal.App.4th at p. 539.) Rodriguez purportedly made an incriminating statement to a total stranger in a bar. According to the prosecutor, the former officer had contacted "America's Most Wanted" and said someone named Hernandez claimed he murdered someone somewhere. The prosecutor said the detective had interviewed the former officer and showed her a photo lineup that included Rodriguez's photo but she was unable to make a positive identification. Defense counsel did not dispute this recitation but said it left out something, which was unidentified. Garcia concluded that, based on the facts before the trial court, the retired officer's statement to the detective lacked reliability. (*Id.* at p. 539.)

*Garcia* also concluded the trial court did not abuse its discretion by not holding an evidentiary hearing, because the defense offered no reason for the court to do so. (*Id.* 134 Cal.App.4th at pp. 539–540.)

Defendant argues *Garcia* is distinguishable because the declarant who purportedly incriminated himself was unquestionably unavailable for cross-examination because he was dead. We cannot credit that argument. The declarant of the incriminating statement—Rodriguez—was not dead and in fact testified at Garcia's trial. (*Id.* 134 Cal.App.4th at p. 532.) It was the retired police officer who was deceased.

Defendant notes *Garcia* added as an additional reason for its decision that the excluded statement would have been cumulative because two witnesses testified Rodriguez admitted the crime. (*Id.* 134 Cal.App.4th at p. 539.) Here, the evidence would not have been cumulative. However, *Garcia* recited it as an additional reason, not the sole or dispositive reason.

Defendant contends the trial court, by failing to summon Flournoy to command her to disclose Red's identity, denied him his constitutional right to compulsory process under the Sixth Amendment of the federal Constitution, which applies to the states (*Washington v. Texas* (1967) 388 U.S. 14, 18–19 [18 L.Ed.2d 1019] ), and California Constitution, article I, section 15. (*People v. Francis* (1988) 200 Cal.App.3d 579, 585 [to coerce witness to testify, court may incarcerate her or prosecute her for criminal contempt].) Defendant posits that he could have then called Red as a witness and used Flournoy's testimony for impeachment if necessary or, alternatively, Flournoy's refusal to identify him would render him unavailable such that Flournoy's testimony would be

admissible. Defendant argues that, unlike *Garcia* where the defense gave no good reason for a hearing, here defense counsel gave a good reason for a hearing—to make Flournoy divulge Red's identity. Defendant claims the trial court refused to bring Flournoy into court based on an erroneous notion that defendant must first show Red was unavailable.

However, when offered by the court, defense counsel declined to have his investigator testify to prove diligent efforts to find Red without having the court summon Flournoy, which the court indicated was a threshold inquiry. Defense counsel instead asked to "table" the matter. He thus abandoned his initial request and did not renew the request until the trial court noted the defense had not pursued the matter. He then acknowledged he was not relying on the defense investigation "per se" to show unavailability.

In any event, even assuming Red were deemed unavailable, that would not allow Flournoy to testify about Red's alleged statement. Even death, which clearly makes a declarant unavailable, does not make the declarant's hearsay statements admissible. (*Ayala*, *supra*, 23 Cal.4th at pp. 267–269; Garcia, supra, 134 Cal.App.4th at p. 539.) We agree with the Attorney General that, based on the information before the trial court at the time of its ruling, the court could reasonably conclude the statement attributed to Red was unreliable, regardless of his unavailability.

Moreover, there was insufficient indicia of reliability to have Flournoy testify. Defendant speculates Flournoy may have added new facts to enhance reliability, e.g., she may have added new information that Red admitted the person he shot was her niece. However, speculation does not suffice.

In his reply brief, defendant relies heavily on *Lunbery v. Hornbeak* (9th Cir.2010) 605 F.3d 754. There, a defendant sought habeas corpus relief on the ground the California courts violated her Sixth Amendment right to present a defense in her trial for murder of her husband, by excluding evidence by a witness who heard one Henry Gaza, dead at the time of trial, state that he and his partners had killed the husband in error, mistaking him for the person who had cheated them in a drug deal. (*Id.* at p. 757.) The Ninth Circuit held the exclusion of Garza's statement deprived the defendant of the right to present a defense because the excluded testimony bore substantial guarantees of trustworthiness and was critical to the defense. (*Id.* at p. 761.) The statement was trustworthy—not just because it was a declaration against penal interest, as defendant suggests—but because "the incriminating statement was corroborated by other evidence in the case:" (1) an acquaintance of Frank Delgado, the former tenant of the defendant's home, indicated Garza and Delgado were involved in drug deals together and had been seen in the house with $40,000 worth of illegal drugs; (2) a confidential informant told police three days after the murder that Delgado had been the intended victim because he had ripped off several people in drug deals; and (3) a neighbor saw a car linked to Garza and Delgado on the street in front of the defendant's house a few hours before the murder. (*Ibid.*)

> *Lunbery* does not help defendant in this case, where there was no comparable evidence of a corroborative nature to support Red's allegedly incriminating statement.

> We conclude the trial court did not err, thus, we need not address defendant's argument that the claimed error was prejudicial.

*Smith*, 2015 WL 5012920, at *3–8. Petitioner presented this claim to the California Supreme Court (Lodg. Doc. No. 7 (Petition for Review – October 2, 2015)) and it was summarily rejected (Lodg. Doc. No. 8 (Denial of Petition for Review)).

## 1.     <u>Applicable Legal Standards</u>

Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense" and the right to present relevant evidence in their own defense. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). The Supreme Court has held, however, that "[t]he accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)). Moreover, evidence may be excluded if it is "repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues." *Holmes*, 547 U.S. at 324.

A state law justification for excluding evidence does not violate a defendant's rights unless it is "arbitrary or disproportionate" and "infringe[s] upon a weighty interest of the accused." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). An exclusion is only unconstitutional if it "significantly undermined fundamental elements of the accused's defense." *Id*. at 315. Even if a court finds constitutional error it may only grant a habeas petition where the petitioner establishes that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). It bears noting that the Supreme Court has never decided whether a state court's discretionary exclusion of evidence can violate a defendant's right to present a defense. *See Moses v. Payne*, 555 F.3d 742, 758 (9th Cir. 2009).

15

The Ninth Circuit has held that, in evaluating claims which arise out of the exclusion of third party culpability evidence, a petitioner must demonstrate that the trial court excluded "trustworthy and necessary exculpatory testimony." *Cudjo v. Ayers*, 698 F.3d 752, 754 (9th Cir. 2012) (citing *Chambers v. Mississippi*, 410 U.S. 284, 300-01 (1973)).  The Supreme Court has emphasized, however, that third party culpability evidence "may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial." *Holmes*, 547 U.S. at 327.

**2.**     **Analysis**

The court of appeal was reasonable in concluding that the trial court's exclusion of Flournoy's statements was not an abuse of discretion.  Despite defense counsel's efforts, Red was never identified, much less found.  No other evidence corroborated or even tangentially supported the theory that Red, rather than petitioner, perpetrated the killing.  Flournoy's statements, accepted as true, were themselves ambiguous as to whether Red was referencing the killing petitioner was charged with.  *See Territory of Guam v. Ignacio*, 10 F.3d 608, 615 (9th Cir. 1993) ("Evidence of third-party culpability is not admissible if it simply affords a possible ground of suspicion against such person; rather, *it must be coupled with substantial evidence tending to directly connect that person with the actual commission of the offense*.") (quoting *Perry v. Rushen*, 713 F.2d 1447, 1449 (9th Cir. 1983)) (internal quotation marks omitted).  In light of the foregoing, this court cannot say that the court of appeal acted unreasonably in denying petitioner's claim.

**B.**     **Ineffective Assistance of Trial Counsel**

Petitioner has four separate ineffective assistance claims.  As noted above, these are: (1) his trial counsel failed to adequately prepare him for his trial testimony; (2) his trial counsel failed to object to hearsay testimony from prosecution witnesses Fred Robinson and Lonnell Hart; (3) his trial counsel failed to renew a request to bring inmate witness Deborah Flournoy from prison to testify as to third party culpability; and (4) his trial counsel failed to present exculpatory testimony from Lanesha Blakes.

1          **1.      Applicable Legal Standards**

2          The clearly established federal law governing ineffective assistance of counsel claims is

3   that set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052,

4   80 L. Ed. 2d 674 (1984).  To succeed on a *Strickland* claim, a defendant must show that (1) his

5   counsel's performance was deficient and that (2) the "deficient performance prejudiced the

6   defense." *Id*. at 687.  Counsel is constitutionally deficient if his or her representation "fell below

7   an objective standard of reasonableness" such that it was outside "the range of competence

8   demanded of attorneys in criminal cases." *Id*. at 687-88 (internal quotation marks omitted).

9   "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose

10  result is reliable.'" *Richter*, 562 at 104 (quoting *Strickland*, 466 U.S. at 687).

11         Prejudice is found where "there is a reasonable probability that, but for counsel's

12  unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466

13  U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

14  outcome." *Id*.  "The likelihood of a different result must be substantial, not just conceivable."

15  *Richter*, 131 S. Ct. at 792.

16         "The standards created by *Strickland* and § 2254(d) are both "highly deferential," and

17  when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations

18  omitted).  Thus, in federal habeas proceedings involving "claims of ineffective assistance of

19  counsel, . . . AEDPA review must be """doubly deferential""" in order to afford "both the state

20  court and the defense attorney the benefit of the doubt." *Woods v. Donald*, __ U.S. __, __, 135 S.

21  Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) (quoting *Burt v. Titlow*, 571 U.S.    ,    , 134 S. Ct. 10,

22  13, 187 L. Ed. 2d 348 (2013)).  As the Ninth Circuit has recently acknowledged, "[t]he question

23  is whether there is any reasonable argument that counsel satisfied Strickland's deferential

24  standard." *Bemore v. Chappell*, 788 F.3d 1151, 1162 (9th Cir. 2015) (quoting *Richter*, 562 U.S.

25  at 105).  *See also Griffin v. Harrington*, 727 F.3d 940, 945 (9th Cir. 2013) ("The pivotal question

26  is whether the state court's application of the *Strickland* standard was unreasonable. This is

27  different from asking whether defense counsel's performance fell below Strickland's standard.")

28  (quoting *Richter*, 562 U.S. at 101).

2.    **Analysis**

Each of the foregoing ineffective assistance claims was presented for the first time in a petition for writ of habeas corpus to the California Supreme Court filed February 29, 2016. Lodg. Doc. No. 9 (Petition for Writ of Habeas Corpus) at 3. The California Supreme Court denied the petition without explicit legal reasoning, offering only citations to *People v. Duvall*, 9 Cal. 4th 464, 474 (1995) and *In re Swain*, 34 Cal. 2d 300, 304. Lodg. Doc. No. 10 (Denial of Petition, California Supreme Court). Respondent argues that the California Supreme Court's denial of these claims was on the merits and, therefore, entitled to deference under AEDPA.

The court construes the California Supreme Court's citations as indicative of the fact that petitioner's claims were not alleged with sufficient particularity. *See King v. Roe*, 340 F.3d 821, 823 (9th Cir. 2003) (noting that *Duvall* and *Swain* are "two cases that require that one must allege with sufficient particularity the facts warranting habeas relief and allow amendment to comply.") (per curiam) (abrogated on other grounds as recognized by *Waldrip v. Hall*, 548 F.3d 729 (9th Cir. 2008)). The Ninth Circuit has indicated that denials referencing *Duvall* and *Swain* should be construed as procedural. *See Cross v. Sisto*, 676 F.3d 1172, 1177 (9th Cir. 2012) ("In light of its citations to Swain and Duvall, we read the California Supreme Court's denial of Gaston's sixth habeas application as . . . a holding that Gaston has not pled facts with sufficient particularity [and] was thus procedurally deficient under California law . . . .") (quoting *Gaston v. Palmer*, 417 F.3d 1030, 1039 (9th Cir. 2005), as amended by order, 447 F.3d 1165 (9th Cir. 2006)). As such, the court reviews these claims de novo. *See Cone v. Bell*, 556 U.S. 449, 472 (2009) (where a state court did not reach the merits of a petitioner's claim "federal habeas review is not subject to the deferential standard that applies under AEDPA . . . [i]nstead, the claim is reviewed *de novo*.").

Respondent acknowledges the foregoing, but argues that, under California law, "the dismissal of an action without prejudice because it fails to state a claim with sufficient particularity is an adjudication on the merits." ECF No. 11 at 29.[3] The court for the reasons stated hereafter, concludes that petitioner's claims fail under the more lenient *de novo* standard.

---

[3] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

1  Accordingly, it need not decide this question. *See Sexton v. Cozner,* 679 F.3d 1150, 1156 (9th

2  Cir. 2012) (noting that where a claim fails under *de novo* review "it necessarily fails under

3  AEDPA's deferential review.").

4       Finally, to the extent these claims are unexhausted, this court exercises its discretion to

5  deny them on the merits. *See Cassett v. Stewart*, 406 F.3d 614, 623 (9th Cir. 2005) ("An

6  application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of

7  the applicant to exhaust the remedies available in the courts of the State.") (quoting 28 U.S.C.

8  § 2254(b)(2)).

9                           **a.      Failure to Prepare Petitioner for his Trial Testimony**

10       Petitioner vaguely argues that his trial counsel's failure to adequately prepare him for his

11  trial testimony resulted in that testimony having "a negative impact on [the] jury."  ECF No. 1 at

12  7.  He does not elaborate as to how his trial counsel undertook to prepare him, how that

13  undertaking was deficient, how his testimony was consequently worse than it otherwise would

14  have been, or what specific negative impact his testimony had on the jury.  As respondent

15  correctly points out, "[i]t is well-settled that 'conclusory allegations which are not supported by a

16  statement of specific facts do not warrant habeas relief.'"  *Jones v. Gomez*, 66 F.3d 199, 204 (9th

17  Cir. 1995) (citing *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)); *see also Heard v. Harrison*, 246

18  Fed. Appx. 449, 452 (9th Cir. 2007) (dismissing a claim that trial counsel failed to prepare

19  petitioner to testify where petitioner failed to "describe in any detail what [counsel] should have

20  prepared him for upon cross-examination" or identify any prejudice resulting from counsel's

21  preparatory shortcomings.).  Further, as another district court in this circuit aptly stated:

22          [T]he adequacy of counsel's preparation of a witness cannot be
            assessed solely on the basis of the witness' performance on the
23          stand when performance on the stand is governed by a variety of
            factors such as the witness' ability to withstand the tenacity of the
24          cross-examining attorney, the witness' command of issues
            independent of and considering counsel's preparation of him, the
25          witness' personal ideas of how best to testify to a certain issue.

26  *Wilson v. Henry*, CV 97-3585, 1998 U.S. Dist. LEXIS 6238, at *41 (N.D. Cal. Apr. 27, 1998).

27  Absent specific argument and convincing evidence that trial counsel's preparation was actually

28  deficient, this claim must fail.

19

## b.    Failure to Object to Hearsay Testimony

Petitioner contends that his trial counsel failed to object to the hearsay testimony of prosecution witnesses Fred Robinson and Lonnell Hart "as to what they heard on the streets." ECF No. 1 at 8. He has not indicated, either by direct citation to the record or his own restatement, what specific, offending testimony these witnesses offered. As such, it is unclear what testimony he is holding out as hearsay.

Respondent points out that, with respect to Robinson, the prosecutor sought to elicit testimony as to what he had told another individual – one Gary Castillo - after the shooting occurred. Lodg. Doc. No. 12 (Reporter's Transcript on Appeal, Volume 1) at 195-198. Castillo had told detectives during an interview that, after the shooting occurred, he left the scene with Robinson and that the latter made several statements referencing the petitioner. *Id*. at 181-185. Questioned about the statements attributed to him by Castillo in the police interview, Robinson repeatedly denied that he had made them. *Id*. at 195-198. During his questioning of Robinson, the prosecutor never asked as to the substantive truth of these statements, only whether they had actually been made. *Id*. As such, petitioner's trial counsel had no cause to offer a hearsay objection. *See* Cal. Evid. Code § 1200(a) ("'Hearsay evidence' is evidence of a statement that was made other than by a witness testifying at the hearing and *that is offered to prove the truth of the matter stated*.") (emphasis added); *see also People v. Gonzales*, 68 Cal 2d 467, 471-72 (1968) (holding that testimony was not hearsay where it "was offered merely to show that the conversation was held and not to prove the truth of the matters asserted.").

The foregoing also holds true of Robinson's testimony regarding his conversations (or lack thereof) with Lonnell Hart. The prosecutor repeatedly asked whether Robinson had a phone conversation with Hart in which they discussed the shooting. Lodg. Doc. No. 12 (Reporter's Transcript on Appeal, Volume 1) at 205-212. These questions went only to whether the conversation was held, not whether its substance was true. *Id*.

Respondent notes that, on redirect, the prosecutor asked Robinson whether he had heard from friends that a person had been shot the previous night. *Id*. at 241-243. These questions also went to whether a conversation occurred, not the underlying truth. Regardless, there was no

dispute that a shooting had occurred at the gas station that night. As such, it is unclear how the failure of his trial counsel to object to this testimony, even if it was hearsay, prejudiced petitioner.

Finally, with respect to Hart's testimony, respondent correctly points out that the prosecutor's questions were an attempt to elicit testimony that Robinson had made statements inconsistent with his trial testimony. Lodg. Doc. No. 12 (Reporter's Transcript on Appeal, Volume 1) at 251- 265. Hart had previously been interviewed by police detectives and related that Robinson made certain statements implicating petitioner in the shooting. Lodg. Doc. No. 11 (Clerk's Transcript on Appeal, Volume 1) at 110-131. Robinson subsequently denied making many of these statements in his trial testimony. Lodg. Doc. No. 12 (Reporter's Transcript on Appeal, Volume 1) at 205-212. Hart's trial testimony also appeared, at various junctions, to be inconsistent with his earlier statements to police detectives regarding his conversation with Robinson about the shooting. *Id*. at 251-265. California law carves an exception from the hearsay rule for evidence of a witness statement if that statement is inconsistent with his hearing testimony. Cal. Evid. Code § 1235. As such, petitioner was not prejudiced by his trial counsel's failure to offer a hearsay objection to Hart's testimony.

### c. **Failure to Renew Request to Present Flournoy's Testimony**

Petitioner argues that his trial counsel rendered ineffective assistance when he failed to renew a request to the trial court to present Flournoy's testimony. ECF No. 1 at 5. Petitioner argues that this failure deprived him of the ability to challenge the trial court's denial on appeal. *Id*. The court of appeal recognized the potential forfeiture caused by trial counsel's omission, but proceeded to address the merits of this issue anyway. *Smith*, 2015 WL 5012920, at *3–8. Accordingly, petitioner cannot show that he was actually prejudiced by his trial counsel's failure to renew the request.

### d. **Failure to Present Exculpatory Testimony from Lanesha Blakes**

In his last ineffective assistance claim, petitioner argues that his trial counsel should have presented testimony from Lanesha Blakes. ECF No. 1 at 5. In his state habeas petition, petitioner claimed that "[Blakes] was with me the whole time the shooting happened and could have told the jury I did not do the shooting." Lodg. Doc. No. 9 (Petition for Writ of Habeas Corpus) at 3.

Petitioner's trial testimony indicated that he gave Blakes a ride from the gas station, that he was chased by another car while he was doing so, and that he heard gun shots upon his return to the gas station. Lodg. Doc. No. 13 (Reporter's Transcript on Appeal, Volume 2) at 575-589. As respondent correctly points out, petitioner has not offered any evidence that Blakes stood ready and willing to corroborate his narrative. Nor has he offered evidence that his trial counsel's decision not to present Blakes' testimony was based on some faulty or inherently unpersuasive justification. To the contrary, review of his trial counsel's closing argument indicates that Blakes was not called as a witness because she could not be found. In relevant part:

> Well, it turns out that Lanisha Blakes isn't in custody at that time. So we have to look the other way. We have to say, well, what does that mean? How do you put the pieces together for Lanisha Blakes?
>
> Now it's true either side could call her as a witness, and you ask why didn't the defense call her as a witness?
>
> Well, you heard Detective Stoops say about Big Cad, oh, he's in Las Vegas. We're never gonna find him. He's out of the jurisdiction of the state. How can you possibly find a guy in Las Vegas?
>
> Well, we all have trouble finding people in a case like this where they just disappear, they're gone.
>
> . . .
>
> Bring that person in and you can say, Mr. White, why don't you bring that person in? Well, lot of times people disappear. A lot of times it's not our burden.

Lodg. Doc. No. 14 (Reporter's Transcript on Appeal, Volume 3) at 862-863.

Petitioner has failed to offer any evidence that his trial counsel was, contrary to the statements made during closing argument, capable of finding Blakes and presenting her testimony at the time of his trial. Accordingly, this claim must be denied.

**IV. Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: September 13, 2017.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE